29 P.3d 880

Shea Owen ANDREWS and Justin Daniel Beltran, Petitioners,

v.

The Honorable Penny L. WILLRICH and the Honorable Robert Oberbillig, Judges of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judges,

Richard M. ROMLEY, Maricopa County Attorney, Real Party in Interest.

Nos. 1 CA–SA 01–0072, 1 CA–SA 01–0109.

Court of Appeals of Arizona, Division 1, Department E.

Aug. 16, 2001.

James J. Haas, Maricopa County Public Defender, by Jennifer L. Moore, Deputy Public Defender, Mesa, Attorneys for Petitioner Andrews.

James J. Haas, Maricopa County Public Defender, by Ian Pettycrew, Deputy Public Defender, Mesa, Attorneys for Petitioner Beltran.

Richard M. Romley, Maricopa County Attorney, by Patricia A. Nigro, Deputy County Attorney, Phoenix, Attorneys for Real Party in Interest.

## OPINION

TIMMER, Judge.

¶ 1 In 1996, Arizona voters passed Proposition 102, the Juvenile Justice Initiative, repealing part of the Arizona Constitution and adopting new provisions relating to the courts' jurisdiction over juveniles who commit crimes. In the wake of these constitutional changes, the legislature enacted Arizona Revised Statutes ("A.R.S.") §§ 8–302(B) (1999) and 13–501(B) (Supp.2000), which vest exclusive authority in the prosecutor to determine whether juveniles in specified circumstances will be tried as adults.

¶ 2 In these consolidated special actions, we are asked to decide whether §§ 8–302(B) and 13–501(B) violate the separation of powers doctrine and petitioners' due process rights guaranteed by the state and federal constitutions. We hold that the statutes do

not violate these constitutional tenets and therefore deny relief to petitioners.

## SPECIAL ACTION JURISDICTION

¶ 3 We accept jurisdiction over these special actions because there is no equally plain, speedy or adequate remedy by appeal. Ariz. R.P. Spec. Act. 1; *Nalbandian v. Superior Court*, 163 Ariz. 126, 130, 786 P.2d 977, 981 (App.1989) (normal method of review for criminal interlocutory order is special action). Additionally, petitioners raise constitutional issues of first impression and statewide importance. *Martin v. Reinstein*, 195 Ariz. 293, 300–01, ¶ 10, 987 P.2d 779, 786–87 (App. 1999).

## BACKGROUND

¶ 4 The Maricopa County Attorney charged fifteen-year-old Shea Owen Andrews with two counts of sexual conduct with a minor, in violation of A.R.S. § 13–1405 (2001), and four counts of child molestation, in violation of A.R.S. § 13–1410 (2001), all class 2 felonies and dangerous crimes against children. In an unrelated proceeding, the county attorney charged sixteen-year-old Justin Daniel Beltran with one count of burglary in the second degree, a class 3 felony, in violation of A.R.S. § 13–1507 (2001). Exercising its discretion, the county attorney filed these charges directly against the petitioners without first filing delinquency petitions in juvenile court. *See* A.R.S. § 13–501(B) (county attorney may bring criminal prosecution against a juvenile in same manner as adult if juvenile is at least fourteen years of age and accused of committing certain enumerated offenses).

¶ 5 Both juveniles requested the trial court to conduct hearings to determine whether the cases should be transferred to the juvenile court for disposition. After the court scheduled the hearings, the State moved to vacate them, contending that the court lacked authority to transfer the cases to juvenile court absent motions by the State. *See*

A.R.S. § 8–302(B) (During the pendency of a criminal charge against a juvenile, the court shall transfer the case to the juvenile department "on motion of the prosecutor."). Petitioners responded that §§ 13–501(B) and 8–302(B) violate the separation of powers doctrine and deprive them of their due process rights guaranteed by the state and federal constitutions. In both cases, the trial court vacated the hearings, denied the motions, and stayed further proceedings pending special action review by this court.

## DISCUSSION

### A.   Separation of Powers

¶ 6 Petitioners argue that §§ 8–302(B) and 13–501(B) violate the separation of powers provision, Article 3 of the Arizona Constitution,[1] because the statutes enable the prosecutor to control whether a juvenile over the age of 14 years who commits enumerated offenses will be punished under an adult or juvenile sentencing scheme. According to petitioners, this decision is a judicial function that cannot be usurped by the executive branch.

¶ 7 Although the Arizona Constitution created separate and distinct branches of government, our courts have recognized that an unyielding separation of powers is impracticable in a complex government, and some blending of powers is constitutionally acceptable. *San Carlos Apache Tribe v. Superior Court ex rel. County of Maricopa*, 193 Ariz. 195, 211, ¶ 37, 972 P.2d 179, 195 (1999); *State v. Prentiss*, 163 Ariz. 81, 84, 786 P.2d 932, 935 (1989) ("The separation of powers does not require a 'hermetic sealing off' of the three branches of government."). Thus, a legislative enactment violates Article 3 only when it unreasonably limits another branch's performance of its duties. *San Carlos Apache Tribe*, 193 Ariz. at 211, ¶ 37, 972 P.2d at 195.

1.   Article 3 provides as follows:
       The powers of the government of the State of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others.

¶ 8 To determine whether a legislative enactment unreasonably limits another branch's performance of its duties, our courts have crafted a four-factor inquiry. Consequently, we decide whether §§ 8–302(B) and 13–501(B) unreasonably limit the judiciary's functions by examining the following factors: (1) the essential nature of the power exercised; (2) the degree of control that the executive branch assumes in exercising the judiciary's power; (3) the objective of the exercise; and (4) the practical consequences of the action. *Id.; State v. Donald,* 198 Ariz. 406, 416, ¶ 37, 10 P.3d 1193, 1203 (App.2000).

### 1. Essential nature of the power exercised

¶ 9 Prior to December 6, 1996, Article 6, § 15 of the Arizona Constitution vested exclusive original jurisdiction over "all proceedings and matters affecting ... children accused of crime" in the judicial branch. The provision further required judges to hold examinations before any criminal (adult) prosecution of children to determine whether to suspend such proceedings. Ariz. Const. art. 6, § 15 (repealed 1996). Thus, the judiciary was constitutionally empowered to determine whether children accused of crimes should be tried and sentenced as adults or adjudicated in juvenile court. *State v. Jiminez,* 109 Ariz. 305, 306, 509 P.2d 198, 199 (1973).

¶ 10 At the general election held in 1996, the voters passed ballot Proposition 102, the Juvenile Justice Initiative, which repealed former Article 6, § 15 and adopted new Article 4, part 2, § 22 and Article 6, § 15, effective December 6, 1996. *In re Cameron T.,* 190 Ariz. 456, 457, 949 P.2d 545, 546 (App. 1997). One purpose of Proposition 102 was to allow the legislature to limit the power of the courts to suspend the prosecution of juveniles as adults. *Id.* at 459, 949 P.2d at 548. Thus, the new version of Article 6, § 15 provides that "[t]he jurisdiction and authority of the courts ... in all proceedings and matters affecting juveniles shall be as provided by the legislature or the people by initiative or referendum." Ariz. Const. art. 6, § 15. Article 4, part 2, § 22 elaborates on this authority by providing that "the legislature, or the people by initiative or referendum, shall have the authority to enact substantive and procedural laws regarding all proceedings and matters affecting" juvenile offenders. The provision then mandates that juveniles 15 years of age and older who commit violent felony offenses or who are chronic felony offenders be prosecuted as adults. Ariz. Const. art. 4, pt. 2, § 22(1). "All other juveniles accused of unlawful conduct shall be prosecuted as provided by law." *Id.*

¶ 11 After passage of Proposition 102, the legislature enacted §§ 8–302(B) and 13–501(B), which authorized the executive branch to decide on a case-by-case basis whether juveniles age 14 and older and accused of committing specified crimes should be tried as adults or adjudicated in juvenile court. Petitioners contend that the legislature exceeded its constitutional authority by empowering the executive branch to select which sentencing scheme the court can use to punish a juvenile offender. The State counters that its prerogative to charge and prosecute a juvenile as an adult is not an exercise of judicial power merely because its choice also determines which sentencing scheme will be available to the court. We decide that the nature of the power exercised under §§ 8–302(B) and 13–501(B) involves a blend of executive and judicial functions.

¶ 12 Control of the sentencing process does not rest exclusively with the judiciary but is instead distributed among all branches of government. *Prentiss,* 163 Ariz. at 84, 786 P.2d at 935. The legislature fixes the punishment range for an offense and identifies any factors that can be used to enhance a sentence; the executive branch decides what criminal charges to file and whether to allege sentence-enhancement factors; and the judiciary retains exclusive power to decide a sentence within the range authorized by the legislature. *Id.* at 85, 786 P.2d at 936. By granting the prosecutor the exclusive authority to charge certain juveniles as adults, the legislature necessarily empowers the executive branch to affect the judiciary's choice of punishment to impose on such offenders. Accordingly, in a broad sense, the exercise of power under §§ 8–302(B) and 13–501(B) involves both the executive branch's charging function and the judiciary's sentencing func-

tion. The pivotal question remaining, therefore, is whether the executive branch, by exercising its charging function under §§ 8–302(B) and 13–501(B), unreasonably limits the judiciary's sentencing power. *San Carlos Apache Tribe,* 193 Ariz. at 211, ¶ 37, 972 P.2d at 195.

### 2. Executive branch's degree of control over sentencing juvenile offenders

¶ 13 The legislature cannot empower the executive branch to interfere with the judiciary's discretion to impose an authorized sentence. *Prentiss,* 163 Ariz. at 85, 786 P.2d at 936.; *State v. Jones,* 142 Ariz. 302, 305, 689 P.2d 561, 564 (App.1984) (legislature cannot constitutionally give prosecutor authority after conviction to decide punishment; that is judicial function). Such an enactment would " 'unreasonably limit[ ] or hamper' " the judicial system in performing its function, thereby violating the separation of powers doctrine. *Prentiss,* 163 Ariz. at 84, 786 P.2d at 935.

¶ 14 Petitioners cite several cases to support their contention that §§ 8–302(B) and 13–501(B) authorize the executive branch to impermissibly encroach upon the judiciary's power to sentence a juvenile offender. However, as the State correctly points out, these cases address statutes authorizing prosecutors to determine and shape sentences *after* convictions and are therefore distinguishable from the circumstances before us.[2] *See Prentiss,* 163 Ariz. at 85, 786 P.2d at 936 (statute violates separation of powers by requiring prosecutor to allege certain mitigating circumstances before court can consider them at sentencing); *State v. Ramsey,* 171 Ariz. 409, 413, 831 P.2d 408, 412 (App.1992) (portion of statute requiring prosecutorial concurrence with court decision to grant probation frustrates court's sentencing discretion and thus violates separation of powers doctrine); *State v. Dykes,* 163 Ariz. 581, 584, 789 P.2d 1082, 1085 (App.1990) (requiring motion by prosecutor before court could apply lesser sentence violates separation of powers doctrine); *Jones,* 142 Ariz. at 304–05, 689 P.2d at 563–64 (statute that makes alternative sentencing dependent upon prosecutor's recommendation impermissibly encroaches on judicial function).

¶ 15 Unlike the statutes at issue in the cases cited by petitioners, §§ 8–302(B) and 13–501(B), which enable the prosecutor to exercise its charging function, do not infringe upon the court's exercise of sentencing discretion within the range authorized by the legislature. Unquestionably, the prosecutor has the power to decide what charges to file against a person accused of a crime, *Dykes,* 163 Ariz. at 584, 789 P.2d at 1085, and whether to terminate or divert the prosecution of a case after its commencement, unless the legislature has restricted that authority. *State v. Larson,* 159 Ariz. 14, 16, 764 P.2d 749, 751 (App.1988). By necessity, the prosecutor's selection and pursuit of charges will ultimately decide the range of sentence available to the court upon a defendant's conviction.

¶ 16 Similarly, the prosecutor's decision to prosecute a minor as an adult effectively selects the range of punishment established by the legislature and available to the court. The prosecutor's decision, however, does not curtail the court's exercise of discretion in choosing an appropriate punishment from among the legislatively authorized options. Accordingly, the court's functions are not "unreasonably limited or hampered," and the prosecutor does not impermissibly exercise powers belonging to the judiciary by charging juveniles as adults pursuant to § 13–

**2.** Petitioners also rely on a recent California case, *Manduley v. Superior Court,* 104 Cal. Rptr.2d 140, 149 (4th App. Dist.2001), which held that a statute authorizing prosecutors to exclusively decide whether to charge juvenile offenders as adults violates California's separation of powers doctrine. Since petitioners filed their petitions, however, the California Supreme Court accepted review of the appellate court decision, thereby superseding it and effectively rendering it an "unpublished" decision. 106 Cal.Rptr.2d 269, 21 P.3d 1188 (2001) (granting review); Cal. R. Court 976(d); *Fireman's Fund Ins. Co. v. Nat'l Bank for Coops.,* 849 F.Supp. 1347, 1360 (N.D.Cal.1994). Accordingly, *Manduley* cannot be cited or treated as precedent, and we do not address it. ARCAP 28(c) ("Memorandum decisions shall not be regarded as precedent nor cited in any court...."); *Walden Books Co. v. Dep't of Revenue,* 198 Ariz. 584, 589, 12 P.3d 809, 814 (App.2000) (holding that Rule 28(c) applies to unpublished decisions from other jurisdictions).

501(B) or controlling the decision to pursue such charges in that forum pursuant to § 8–302(B). *Prentiss*, 163 Ariz. at 84–85, 786 P.2d at 935–36; *compare State v. Superior Court (Wing)*, 180 Ariz. 384, 387, 884 P.2d 270, 273 (App.1994) ("[T]he judicial branch cannot interfere with a prosecutor's decision to initiate delinquency proceedings in juvenile court.").

¶ 17 In supplemental briefing ordered by this court, Petitioner Andrews additionally argues that the legislature's constitutionally granted authority to limit the court's power to suspend criminal prosecutions of juvenile offenders cannot be delegated to the executive branch without violating the separation of powers doctrine. According to Andrews, §§ 8–302(B) and 13–501(B) impermissibly authorize the executive branch to "decide the law" by determining whether to charge certain juvenile offenders as adults, thereby selecting the applicable sentencing scheme for the court. We disagree.

¶ 18 The legislature has not delegated its power to fix punishments for crimes by granting discretion to prosecutors to charge certain juvenile offenders as adults. The legislature has both specified the circumstances under which prosecutors may charge juvenile offenders as adults, A.R.S. § 8–302(B), and established a range of punishment options for such offenders. Under these circumstances, the legislature has not relinquished its power to decide the range of punishment available to the court for imposition on those who commit crimes. *See United States v. Batchelder*, 442 U.S. 114, 125–26, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979) (two statutes providing different penalties for the same crime did not impermissibly delegate legislative responsibility for fixing penalties to executive branch because Congress fulfilled its duty by informing the court, prosecutor and defendant of the permissible punishment alternatives).

### 3. Objective of the exercise

¶ 19 The objective of §§ 8–302(B) and 13–501(B) is to enable prosecutors to decide whether juvenile offenders, under circumstances outlined by the legislature, are tried as adults or adjudicated in juvenile court.

Although this goal allows the prosecutor to effectively select the sentencing scheme used to punish such offenders, it does not permit the prosecutor to predetermine the penalty ultimately imposed by the court. Consequently, we do not discern an intent by the legislature to enable the executive branch to usurp the judiciary's sentencing power.

### 4. Practical consequences

¶ 20 As a consequence of §§ 8–302(B) and 13–501(B), the courts must sentence juvenile offenders as adults if the prosecutor chooses to charge them as adults. But, as previously discussed at ¶¶ 9–12, *supra*, the judiciary does not possess unfettered power at sentencing. Instead, the sentencing function is limited by legislative enactment and the charging decision. Because the judiciary's right to fashion a sentence from the available range of penalties remains undisturbed by §§ 8–302(B) and 13–501(B), the practical application of these provisions does not violate the separation of powers doctrine.

¶ 21 After considering each of the pertinent factors, we hold that the legislature did not usurp the judiciary's powers by enacting §§ 8–302(B) and 13–501(B) and enabling the executive branch to decide whether to charge and prosecute specified juvenile offenders as adults. Therefore, these provisions do not violate Article 3 of the Arizona Constitution.

### B. Due process

■ ¶ 22 Petitioners finally argue that §§ 8–302(B) and 13–501(B) violate their due process rights guaranteed by the state and federal constitutions because the statutes do not provide for notice and an opportunity to be heard before a prosecutor either charges a qualified juvenile offender as an adult or refuses a request for transfer to the juvenile court. Petitioners do not cite any authority advancing their contention, and we are not aware of such support.

■ ¶ 23 Due process requires a meaningful opportunity to be heard only when a person may be deprived of life, liberty, or property. *See In re Maricopa County Juv. Action No. JD–6123*, 191 Ariz. 384, 391, 956 P.2d 511, 518 (App.1997); *Burnsworth v.*

*Gunderson,* 179 F.3d 771, 774 (9th Cir.1999). Petitioners do not identify any liberty interest that may be deprived by the prosecutor's exercise of discretion pursuant to §§ 8–302(B) or 13–501(B). Indeed, our constitution clearly provides that juvenile offenders do not possess rights to be adjudicated in juvenile court. Ariz. Const. art. 4, pt. 2, § 22. Thus, due process does not require that a juvenile offender be afforded notice and an opportunity to be heard either before the prosecutor elects to charge him as an adult under § 8–302(B) or after refusing to move the court to transfer the case to the juvenile court pursuant to § 13–501(B). *See Woodard v. Wainwright,* 556 F.2d 781, 786–87 (5th Cir.1977) (no due process right to hearing when statute permits discretionary direct filing in adult court by prosecutor against juvenile); *compare Kent v. United States,* 383 U.S. 541, 561–62, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) (when statute confers right to judicial determination of fitness for prosecution of juvenile as adult, due process requires determination be made with basic procedural protections afforded similar judicial decisions).

## CONCLUSION

¶ 24 For the foregoing reasons, we accept jurisdiction of these special actions and hold that A.R.S. §§ 8–302(B) and 13–501(B) do not violate the separation of powers doctrine by authorizing the executive branch to control whether specified juveniles will be tried as adults or adjudicated in juvenile court. We further hold that these provisions do not deprive petitioners of their due process rights guaranteed by the state and federal constitutions. We therefore deny relief to petitioners.

CONCURRING: MICHAEL D. RYAN, Presiding Judge, and E.G. NOYES, JR., Judge.